The plaintiff sues as receiver to recover on account of the secondary liability of the defendant as a shareholder in an insolvent state banking corporation.
The following facts are disclosed by the record: The defendant held twenty-seven shares of capital stock of the Loraine State Bank, a domestic banking corporation. On October 31, 1923, this bank was closed as insolvent and placed in the hands of a receiver. The plaintiff is the receiver of insolvent state banks appointed by the district judge designated by the Supreme Court to liquidate and wind up the affairs *Page 177 
of insolvent state banks pursuant to the provisions of chapter 137, Sess. Laws 1923 (§§ 5191b1-5191b19, Supplement) and chapter 99, Sess. Laws 1927. On January 21, 1924, an assessment was duly made against the shareholders of the Loraine State Bank for the full amount of their secondary statutory liability. See § 5168, Comp. Laws 1913. This suit is to recover of the defendant on account of such assessment. It was begun on September 8, 1927. Certain real property belonging to the defendant was attached. Service of the summons and complaint was made upon the defendant pursuant to § 7431, Comp. Laws 1913, at Wolf Point, Montana, on September 23, 1927. The defendant at the time of the bringing of the action and for some time prior thereto, was a nonresident of the state of North Dakota, residing at Wolf Point. On September 28, George Laney, the agent of the plaintiff Baird, went to Wolf Point and endeavored to collect the amount of the assessment from the defendant. The defendant said that he was in financial straits; that he was compromising his debts; that he could not and would not pay the full amount of the assessment. The parties then attempted to negotiate a compromise. Laney apparently had investigated as to the property of the defendant in Montana. It does not appear that he knew the defendant had any property in North Dakota. Neither does it appear that Laney was or was not aware that suit had been begun in North Dakota and the defendant's property there attached. In any event, the defendant said nothing to him about the suit. After considerable dickering Laney offered to accept $1,000 in satisfaction of the claim against the defendant. The defendant agreed to pay this amount providing he could borrow the money. Both parties then went to the local bank. Defendant talked with the banker and arranged to borrow $1,000 on his representation that he could settle his liability with the receiver for that amount. Both he and the banker inquired of Laney as to the latter's authority to make the settlement and Laney exhibited a writing from the plaintiff authorizing him to "act for and on behalf of the receiver, with full power to collect money, execute any and all proper and necessary receipts and acquittances, to engage attorneys, agents, or other representatives as in his judgment may seem necessary and proper." Laney further said that compromises *Page 178 
of such claims as the receiver had against the defendant would be based on the debtor's financial condition, age and earning capacity, and that "I (Laney) had no right to come to him and say that I would take fifty cents on the dollar and that the receiver deal in North Dakota was handled along the same line that the International Harvester handled their settlements with compromise settlements and financial statements, and I said if his financial statement was such I could give him a compromise." Switzer stated that if he paid the $1,000 it would have to be final. In response Laney said that he had been getting those settlements all over the country and they always had been approved by the receiver. The defendant at Laney's request then filled out a statement showing such property as he had in Montana and on the advice of the banker signed the same. He omitted any mention of property in North Dakota. He then procured from the banker and gave to Laney a draft for $1,000 payable to the receiver and Laney executed and delivered to him a written statement showing a compromise and settlement of the liability signed in the name of L.R. Baird, receiver, by Laney as assistant receiver. Laney forwarded the draft to Baird who accepted the same and cashed it on October 6, 1927. Apparently nothing further was said or done about the matter for some time. Then the defendant wrote the receiver requesting a release of the North Dakota attachment. In response the receiver on October 27, wrote:
"The proposed settlement which Mr. Laney made with you when he called upon you was based upon a financial statement furnished by yourself, which, if we are correctly informed, does not exactly reflect your true financial standing. Until that matter has been definitely settled I cannot agree to release the attachment which has been filed in North Dakota. If you have any explanation to make as to the financial statement furnished us, kindly communicate the same direct to Mr. J.P. Reeve at Burlington, North Dakota, who has direct charge of the affairs of this bank, and he will immediately place himself in touch with attorney Bryans of Mohall."
The receiver, however, did not return or offer to return the amount of the compromise payment. Although defendant's attorney repeatedly asked him whether he was going to return the money, he could get no answer. On January 28 defendant assigned his interest in the $1,000, *Page 179 
thus held by the plaintiff, to the Wolf Point bank which had advanced the money to make the payment. Demand was thereupon made by the bank for the return of the same but no return was made. Mr. Aaker, attorney for the defendant and for the assignee bank, also wrote Mr. Bryans, plaintiff's attorney in this particular matter, inquiring as to the return of the money. On March 2, Bryans, writing in response, said that the receiver had not accepted the money paid as a settlement and that he was holding it to apply on such judgment as might be obtained in his action against Switzer. On April 12, Mr. Reeve, in direct charge of the affairs of the Loraine bank under the receiver, wrote that the proposed compromise settlement was rescinded and void and that the receiver was willing to return the money paid on delivery of all papers given by Laney to the defendant at the time of the alleged compromise. Here the matter rested until the trial of the action in July, 1928. At that time the money was paid into court to await the outcome of the suit. It was then stipulated that if judgment should be finally entered against the defendant for the amount of the assessment on the theory that there had been no settlement, the money should be paid to the Wolf Point bank pursuant to the assignment of January 28, 1928, otherwise it should be returned to the plaintiff. On this record the court made findings of fact favorable to the plaintiff, among other things, finding: "The court further finds that on or about the 28th day of September, 1927, the defendant made an attempt to make a settlement of this cause of action with an employee of the plaintiff and to that end gave to said employee of the plaintiff a draft in the sum of $1,000, which said draft was to be accepted in full payment of the amount due under the cause of action herein, but that the said settlement was made subject to the approval of the plaintiff herein and of this district manager; that said settlement was never approved but that said plaintiff held the sum of $1,000 and kept possession thereof from the said 28th of September, 1927, to and until the 19th day of July, 1928," and ordered judgment for the plaintiff. Judgment was thereupon entered accordingly and the defendant perfected the instant appeal.
The sole question raised in this case is as to whether or not the record discloses such conduct on the part of the receiver and his agents as *Page 180 
precludes him from repudiating the attempted settlement and maintaining the action.
It may be that Laney did not intend to make an absolute compromise and settlement at the time he received the $1,000 from the defendant and executed the statement showing such settlement. However, what he said with respect to the matter was exceedingly vague and might well have led the defendant to believe that the settlement thus made was complete and final. In any event, defendant acted on the assumption that it was a complete and final settlement. It cannot be argued that there was any fraud on his part because he said nothing about the attachment suit or about his property in North Dakota. Laney came to see the defendant shortly after the defendant was served with process. It was only reasonable for defendant to assume that Laney was apprised of all the facts with reference to the matter, and he was later justified in this assumption because the receiver knowing of the suit and attachment cashed the draft and kept the money. The record is wholly silent as to whether Laney did in fact know anything about the suit or about the North Dakota property. But whatever the immediate result of the negotiations between Laney and the defendant was, that result is immaterial for the reason that the receiver by his subsequent conduct and that of his agents evidenced an approval of such settlement. He retained its fruits. First, absolutely, and then later that they might be applied on such judgment as might be secured. Though a return was demanded he refused to give the defendant's money back to him. He could not with the same breath blow both hot and cold. If he did not want to approve of the settlement he should, at least, have promptly notified the defendant to that effect and returned the money. And not having done so he must be held to have approved the settlement.
It was intimated during the argument that the money paid into court during the trial of the case in the lower court may have been paid over to the defendant or his assignee. There is nothing in the record to apprise us of what was done in this regard. But to make certain that each party shall secure that to which he is entitled, the case will be remanded to the district court to enable testimony to be taken with respect to this matter. If it shall appear that the money paid into court remains there pending the result of this appeal, judgment will be *Page 181 
ordered for the defendant and the money returned to the plaintiff. If it shall appear that the money has been paid to and received by the defendant or his assignee, then judgment will be ordered for the plaintiff.
BURKE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.